Hast, J.
Defendants, under their first claim of error, contend that the zoning ordinance in question is void because in its adoption the trustees and the zoning commission of Poland township and the planning commission of Mahoning county failed to follow the mandatory requirements of Sections 3180-30, 3180-31, 3180-32, 3180-34 and 3180-35, General Code, in that the zoning commission failed to hold a public hearing on its recommendations to zone the area, a notice by publication at least 30 days before the hearing being required; in that the zoning resolution with maps was not submitted to the county planning commission for its approval; and in that the township trustees before their adoption of the zoning resolution failed to hold a public hearing on the resolution after proper notice. *427 It is the claim of the defendants that the requirements of Sections 3180-30 to 3180-35, General Code, are mandatory and that no showing of compliance was made in the trial of this cause.
The answers of the defendants do not set out as a defense any claimed illegality of the legislation adopted by the zoning commission or the township trustees, but allege estoppel, that the zoning ordinance does not apply to the defendants, and that it is unconstitutional, discriminatory and arbitrary as to them.
During the trial of the case, plaintiffs introduced a copy of the zoning ordinance but did not offer in evidence all the steps taken preliminary to the adoption thereof.
From the record, these questions do not seem to have been raised in the trial of the case, but only by briefs submitted to the court by the defendants. In fact, the record indicates that evidence of this ordinance was received under formal objection, without any claim being made as to its invalidity. In the course of the trial, when this evidence was being presented, the trial court made inquiry of counsel for the defendants and received an answer as follows:
“Court: I am asking you whether you will admit this portion of the procedure, that is, this purports to be a copy of a document wherein the trustees of Poland township certify to the Mahoning county deputy supervisors of elections that the zoning commission of Poland township adopted a zoning plan which was accepted by the attesting trustees and that the trustees request the board, that is, the Mahoning county deputy etc. to submit the following to be voted upon at the general election on November 8 for adoption or rejection by the electors of Poland township, this question to be on the ballot: Shall the zoning plan adopted by the zoning commission and accepted by the trustees of Poland township be adopted and approved? *428 Are you willing to stipulate that the trustees of Poland township took that procedure?
“Mr. Haynes: Yes, that is all right.”
In fact, there is affirmative and uncontradicted evidence in the record, through the testimony of a member of the Poland township zoning commission, that the commission held two public hearings attended by many persons interested in the matter, and that the zoning plan was submitted to the township trustees, after which the trustees voted upon and approved the plan.
The introduction of public records makes a prima facie case as to the validity of matters contained in them. In the absence of evidence to the contrary, it is presumed that the procedure necessary to the legal adoption of legislation by a public legislative body has been followed. In the case of City of Youngstown v. Aiello, 156 Ohio St., 32, 37, 100 N. E. (2d), 62, this court, in discussing legislation involved in the passage of an ordinance, said:
“In the absence of any evidence to the contrary it is proper to assume that such provision was complied with and that the ordinance was duly published and in due time became effective as a valid ordinance of the city of Youngstown. Vansuch, Dir., v. State, ex rel. Fetch, 112 Ohio St., 688, 148 N. E., 232.”
The defendants claim further that the court erred in sustaining the validity of the zoning ordinance because it deprives them of a common-law right which they have in the lands in question to utilize them for the purpose of strip-mining coal. They claim that, under the law, where one owns real estate, he may use it for any lawful purpose so long as a public nuisance is not created.
The purpose of a zoning ordinance is to limit the use of land in the interest of the public welfare. If a zoning ordinance is general in its application, the classifi *429 cations as to uses to which the property may be devoted are reasonable, and pre-existing vested rights are recognized and protected, it is a valid exercise of the police power. Village of Euclid v. Ambler Realty Co., 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016; Pritz v. Messer, 112 Ohio St., 628, 149 N. E., 30; Koch v. City of Toledo, 37 F. (2d), 336.
The ordinance in question is similar to other zoning ordinances relating to the strip-mining of coal in residential areas, the validity of which have generally been recognized. The ordinance in the instant case prohibits strip-mining of coal in such areas, but at the same time permits the continuance and expansion of pre-existing nonconforming uses of property within the area covered by the ordinance. The court did not err in its judgment in this respect.
The principal claim of the defendants is that the court erred in upholding the zoning ordinance in question because it retroactively impairs the contracts of lease between Juillerat and Marrie on the one side and the coal company on the other, permitting the latter to strip-mine coal on the lands of the former.
In dealing with the subject of impairment of contracts, 8 Ohio Jurisprudence, 577, Section 441, says:
“The provision of the federal Constitution prohibiting the impairment of the obligation of contracts was intended to prohibit every mode or devise having such purpose. * * * In a general sense, any law enacted by the state cannot apply to a contract entered into by the parties prior to the enactment of such law, if it changes, either by enlarging or reducing, the obligation in favor of one party and against the other. * * * The obligation of a contract is the duty which the law, at the time of making the contract, imposes upon the parties to perform their agreement. And if the law be so changed that the means of legally enforcing this duty are materially impaired, the obligation of the *430 contract no longer remains the same. Manifestly, the complete destruction of an obligation is an ¿ impairment’ of that obligation.” See State, ex rel. Slaughter, v. Industrial Commission, 132 Ohio St., 537, 9 N. E. (2d), 505.
This court is of the opinion that impairment of the obligation of contracts is not involved in this case. The operation of the zoning ordinance in question does not have the effect of relieving one of the parties to a lease from his obligation to the other. The right of the lessee and those of the lessors remain, as between the parties, unchanged. The operation of the ordinance may affect the rights of both the lessors and the lessee but not their rights inter se.
All contracts made are subject to the paramount rights of the public, and all contracts, the subject matter of which involves the public welfare, must have read into them all public law and regulations then existing or thereafter enacted, which tend to the promotion of health, order, convenience and comfort of the public.
The question here is whether the ordinance has a retroactive effect in depriving the lessors or the lessee or both from using the properties for a nonconforming use on the basis that such use had commenced before the effective date of the ordinance. See State, ex rel. Fairmount Center Co., v. Arnold, Dir., 138 Ohio St., 259, 34 N. E. (2d), 777, 136 A. L. R., 840.
The trial court must have found that the defendants had not perfected a pre-existing nonconforming use in the operation of a strip mine prior to the effective date of the ordinance, and the record fully supports such a finding. The zoning ordinance proceeding was instituted in February 1949, eight months before the execution of the leases for strip-mining. This action was commenced on October 21,1949. On November 8,1949, the ordinance was approved by the electorate and be *431 came effective November 13, 1949. No coal had been mined at that time and the record discloses that the coal company was not prepared to do any such mining at the time the ordinance became effective.
At the trial on November 9, 1949, the president of the coal company, being called by the plaintiff for cross-examination, testified as follows:
“Q. So that at the time this lawsuit was filed the Lake Erie Coal & Supply Company was not entitled to engage in strip mining in the state of Ohio? A. They never did strip mine.
a # * #
“Q. And so far then you have only been testing out there ? A. That is right.
“Q. And if those tests prove inadequate or unsatisfactory you wouldn’t strip mine even if permitted by this court to do so? A. That is right, we would be finished.
“Q. To date you haven’t even gotten to the place where you have removed any coal for testing purposes? A. No.
C i * * #
“Q. And you don’t know what the result of those tests would be? A. That is right.”
The rule seems to be that where no substantial nonconforming use has been made of property, even though such use is contemplated, and money has been expended in preliminary work to that end, a property owner has acquired no vested right to such use and is deprived of none by the operation of a valid zoning-ordinance denying the right to proceed with his intended use of the property. State, ex rel. Ohio Hair Products Co., v. Rendigs, Bldg. Commr., 98 Ohio St., 251, 120 N. E., 836; Fitzgerald v. Merard Holding Co., Inc., 110 Conn., 130, 147 A., 513 (certiorari denied, 281 U. S., 732, 74 L. Ed., 1148, 50 S. Ct., 247); Town of Burlington v. Dunn, 318 Mass., 216, 61 N. E. (2d), 243; *432 Socony-Vacuum Oil Co., Inc., v. Township of Mt. Holly, 135 N. J. Law, 112, 51 A. (2d), 19; Marblehead Land Co. v. City of Los Angeles, 47 F. (2d), 528.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Middleton, Taet, Zimmerman, Stewart and Lamneck, JJ., concur.