282

BEAL *v.* CITY OF ELYRIA ET AL.

(No. 74642—Decided February 9, 1971.)

Common Pleas Court of Lorain County.

*Messrs. McCray, Morey & Smith*, for plaintiff.
*Mr. Kosma J. Glavas*, city solicitor, for city of Elyria.
*Mr. Richard T. Laux*, for Lorain County.
*Messrs. Squire, Sanders & Dempsey*, for city of Elyria and Lorain County.

McCRYSTAL, J. (Sitting by assignment.) On August 7, 1970, the city of Elyria and Lorain County executed an agreement relative to the construction of a city-county complex in the city of Elyria. Plaintiff, a taxpayer of the city of Elyria, now seeks to enjoin the city from carrying out the terms of the agreement.[1] The essential terms of the agreement are summarized as follows:

(1) The county is to purchase the Vandemark property and construct thereon an administration building.

(2) The city will contribute $100,000.00 to the administration building construction project.

(3) The city will pay the cost of the construction of an adjacent two-deck parking facility over its present parking lot at the cost of approximately $700,000.00.

(4) A portion of the two-deck parking facility will extend over onto a part of the Vandemark property.

(5) The city will convey to the county the support rights and the air rights necessary for the two-deck parking facility.

(6) The city will retain all rights to existing surface parking and the right to add additional parking or office space above the two-deck facility.

(7) Upon completion of the total project, the city will have a right to occupy five thousand square feet of office space in the county administration building for a five-year period, subject to renewal at the option of the county.

(8) The city retains the right to charge for parking in the parking facility except as to those designated parking spaces determined by the county to be necessary for employees and visitors during regular office hours.

(9) The city is to operate and maintain the parking facility and the county will operate and maintain the administration building.

General authorization for such joint undertakings is found in R. C. 153.61. The principal issue here is whether the city and county have the power to enter into such an agreement as presented in this case. This court finds that

---

[1] In May of 1970, this court ruled as unconstitutional a city-county agreement providing for a county building and parking facilities. See: *Beal* v. *City of Elyria*, Case No. 74221, Common Pleas Court, Lorain County.

the agreement meets the requirements established in R. C. 153.61.

Each of the individual undertakings contested by the plaintiff is a valid undertaking by the parties so obligated by the agreement. Counties, through their Board of Commissioners, have the power granted in R. C. 307.02 to acquire property and construct county office and court house buildings. They also have the power to lease such space as is not necessary for public use to municipal corporations according to R. C. 307.09.

The city has the authority to construct and operate off-street parking facilities under the provisions of R. C. 717.05. They also have the power to lease facilities from the county to use for municipal purposes under the same provisions mentioned in R. C. 307.09.

The above named sections of the Revised Code support individual undertakings by the city and county, but R. C. 153.61 expressly provides for joint construction, acquisition, improvement to any public work, public building, or improvements benefitting the parties thereto. It is upon this Code section that the court relies to support the entire agreement.

R. C. 153.61 empowers counties and cities to enter into agreements providing for joint construction benefitting the two parties. It is apparent that the present agreement before the court benefits both parties.

The above section expressly provides that such agreements must contain the following provisions:

(1) The method by which the building shall be constructed, managed, occupied and maintained, and a specific designation of one of the parties to have exclusive charge of all details of construction, acquisition and improvement.

(2) It must be clearly designated how the title for this complex shall be held.

(3) The cost of acquiring, constructing, managing and maintaining the complex must be apportioned among the parties.

(4) Each party must use the facilities in a manner authorized by the Revised Code for these parties.

The agreement in question satisfies the requirements of R. C. 153.61.

Had the Legislature not enacted R. C. 153.61, the constitutional and statutory authority for the current agreement would not be so clearly defined. The following cases, while related to joint agreements between political subdivisions, would not, in the opinion of this court, provide solid ground upon which to anchor the agreement in question. *Wasson* v. *Commissioners*, 49 Ohio St. 622; *Hubbard* v. *Fitzsimmons*, 57 Ohio St. 436; *State, ex rel. Clemmer,* v. *Turner*, 93 Ohio St. 379; *City of Cleveland* v. *Public Library Board*, 94 Ohio St. 311; *Green* v. *Thomas*, 37 Ohio App. 489; *City of Steubenville* v. *Targoss*, 3 Ohio App. 2d 21; *Hugger* v. *City of Ironton*, 83 Ohio App. 21.

This state of the statutory and case law of Ohio might well have been the motivating cause for the enactment of R. C. 153.61. This court in its research has been able to find only one prior decision discussing this section and that discussion is limited. *Bazell* v. *City of Cincinnati*, 13 Ohio St. 2d 63.

At a time when the legislative load facing each session of the General Assembly is increasing in complexity and volume, such enabling statutes seem to be excellent means to maintain the power of the Legislature while giving other governmental subdivisions the measured amount of discretionary authority necessary to meet their growing needs. In several of the cases listed above the statutory authority for the acts undertaken were found in so-called "special statutes." Such statutes, while effective, are a most inefficient means of meeting the problems that political subdivisions must face in the last third of this century. Statutes designed to affect only one type of undertaking, such as Section 3711, General Code, relating to public libraries, and 113 Ohio Laws 57, relating to transfers of real estate to the state of Ohio, because of their limited and restricted application, can neither be expected to rank high on the legislative calendar nor receive wide support within the Legislature.

On the other hand, general enabling statutes, such as

R. C. 153.61, have the potential of being used statewide to meet a variety of needs and freeing the Legislature of the burden of passing special statutes each time two governmental subdivisions wish to co-operate on an undertaking.

Such statutes, when interpreted by the courts, should recognize and follow the restraints included therein by the Legislature, but should also vest a full measure of discretionary authority in the governmental subdivisions involved.

For these reasons, this court finds that R. C. 153.61 operates in a manner similar to the special statutes discussed above and finds the joint project herein fully constitutional.

In addition to contesting the constitutionality and legality of the joint undertaking herein, the plaintiff also urges that the city of Elyria is giving up more than it receives and that such lack of consideration should void the agreement.

Adequacy of consideration given or received by a political subdivision as the result of agreements with other political bodies or the wisdom of entering into such agreements is not subject to judicial determination except and unless fraud or arbitrary and unreasonable abuse of power is indicated. *Bazell* v. *City of Cincinnati*, 13 Ohio St. 2d 63; *State, ex rel. Shafer*, v. *Turnpike Commission*, 158 Ohio St. 581; *City of Steubenville* v. *Targoss, supra*. Nothing appearing in the record in this case would warrant any such determination by a court. The ultimate responsibility of executing this type of agreement and the completion of this project rests upon the citizens of the city of Elyria and Lorain County and their elected representatives. The Constitution of Ohio and the Revised Code of Ohio provide ample means for the citizens to approve or disapprove of such agreements.

Motion for temporary restraining order and petition for injunction are denied.

*Injunction denied.*